IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES MCCURDY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 19-1898-CFC |
| WRIGHT MEDICAL TECHNOLOGY, | ) |
| INC., and WRIGHT MEDICAL | ) |
| GROUP, INC., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this personal injury action arising from an allegedly defective medical device is a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and a motion to strike pursuant to Fed. R. Civ. P. 12(f) filed by defendants Wright Medical Technology, Inc. ("Wright Technology") and Wright Medical Group, Inc. ("Wright Group") (collectively, "defendants").[1] (D.I. 6) For the following reasons, the court recommends GRANTING-IN-PART and DENYING-IN-PART defendants' motion to dismiss[2] and GRANTING defendants' motion to strike.

---

[1] The briefing for the pending motion is as follows: defendants' opening brief in support of their motion to dismiss (D.I. 7), plaintiff's answering brief (D.I. 12), and defendants' reply brief (D.I. 14).

[2] Plaintiff requested leave to amend the complaint in his answering brief but has not filed a formal motion to amend. (D.I. 12 at 14) The court may permit amendment of the complaint even in the absence of a formal motion to amend. *See Hanewinckel v. Appelbaum*, C.A. No. 15-766-LPS, 2016 WL 5661983, at *6 (D. Del. Sept. 29, 2016) ("We have held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.").

## II. BACKGROUND

### a. The Parties

Plaintiff James McCurdy ("Mr. McCurdy") is a citizen and resident of the state of Alabama. (D.I. 1 at ¶ 1) Wright Technology is a Delaware corporation with its principal place of business in Tennessee. (Id. at ¶ 2) Wright Group is a Delaware corporation with its principal place of business in Tennessee. (Id. at ¶ 3) Wright Group is the parent company for Wright Technology. (Id. at ¶ 5)

### b. Procedural History

Plaintiff commenced this action on October 7, 2019. (D.I. 1) The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). (Id. at ¶ 8) On November 15, 2019, defendants filed the present motions to dismiss for failure to state a claim and to strike plaintiff's demand for prejudgment interest. (D.I. 6)

### c. Facts[3]

This action arises from personal injuries sustained as a result of an allegedly defective hip replacement medical device. Plaintiff has asserted eight claims against defendants: Count I Strict Liability (Design Defect); Count II Strict Liability (Manufacturing Defect); Count III Strict Liability (Failure to Warn); Count IV Negligence; Count V Negligent Misrepresentation; Count VI Fraudulent Misrepresentation; Count VII Breach of Express Warranty; and Count VIII Breach of Implied Warranty. (D.I. 1 at ¶¶ 63-133) Defendants seek to dismiss the complaint in

---

[3] The facts in this section are based upon allegations in the complaint, which the court accepts as true for the purposes of the present motion to dismiss. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

its entirety for failing to correctly identify that plaintiff actually received the allegedly defective component in his hip replacement surgery.[4] (D.I. 7 at 2)

On September 19, 2011, Mr. McCurdy had a left total hip replacement at Riverview Regional Medical Center, LLC ("Riverview") in Gadsden, Alabama. (D.I. 1 at ¶ 58) During this procedure, Mr. McCurdy received the following hip replacement components: (1) Wright Medical Conserve Total A-Class chromium-cobalt head, (2) Wright Medical Profemur Renaissance stem, (3) Wright Medical Profemur modular neck, (4) Wright Dynasty Biofoam shell, and (5) Wright Dynasty A-Class liner. (*Id.*) Mr. McCurdy subsequently experienced severe pain, discomfort, and inflammation in his left thigh and left hip area allegedly as a result of metallosis[5] and the "loosening of the Wright Medical Hip Implant and Conserve Cup."[6] (*Id.* at ¶ 59) On October 31, 2017, Mr. McCurdy had the Wright Medical Hip Implant surgically removed at Riverview. (*Id.* at ¶ 60)

Plaintiff alleges that defendants have misrepresented their hip replacement products, including the Conserve Cup, as safe and effective, despite evidence of the toxicity of metal-on-metal hip replacement products. (*Id.* at ¶¶ 35, 48, 61-62)

## III. LEGAL STANDARD

### a. Motion to Dismiss

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule

---

[4] Alternatively, defendant seeks to dismiss Counts I, II, III, V, VI, VII, and VIII (all except for Negligence in Count IV) for failure to state a claim. (D.I. 7 at 2)
[5] Metallosis is a type of metal poisoning that can lead to the death of bone or other tissue. *See Metallosis & Metal Poisoning*, DRUG WATCH, https://www.drugwatch.com/hip-replacement/metallosis/ (last visited Feb. 25, 2020).
[6] Plaintiff avers the Conserve Cup is a metal-on-metal hip replacement product that puts the metal femoral ball directly in contact with a metal acetabular cup. (D.I. 1 at ¶ 13)

3

12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### b. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.

4

Civ. P. 12(f). Motions to strike serve "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *The Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Tr.*, C.A. No. 09-300-LPS, 2011 WL 710970, at *4 (D. Del. Feb. 22, 2011) (citing *McInerney v. Mayer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)). District courts are afforded "considerable discretion" when addressing a motion to strike. *Yellow Book Sales & Distribution Co., Inc. v. White*, 2011 WL 830520, at *4 (E.D. Pa. Mar. 10, 2011) (citing *Woods v. ERA Med LLC*, 2009 WL 141854 (E.D. Pa. Jan. 21, 2009)). However, granting a motion to strike is generally disfavored and considered "a drastic remedy to be resorted to only when required for the interests of justice." *The Penn Mut. Life Ins. Co.*, 2011 WL 710970, at *4 (citing *Plaum v. Jefferson Pilot Fin. Ins. Co.*, 2004 WL 2980415, at *2 (E.D. Pa. Dec. 22, 2004)). Even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the moving party shows that the allegations have no possible relation to the controversy and will prejudice the moving party. *See Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 359 (D. Del. 2009); *see also Rechsteiner v. Madison Fund, Inc.*, 75 F.R.D. 499, 505 (D. Del. 1977). When ruling on a motion to strike, the court must construe all facts in favor of the nonmoving party, and only grant the motion when the allegations is clearly insufficient. *See Juniper Networks, Inc. v. Palo Alto Networks, Inc.*, 881 F. Supp. 2d 603, 605 (D. Del. 2012).

## IV. DISCUSSION

### a. Motion to Dismiss

Plaintiff's eight claims stem from alleged defects of the Wright Medical Hip Implant and Conserve Cup. (D.I. 1 at ¶¶ 63-133) Defendants seek to dismiss the complaint in its entirety. (D.I. 7 at 2) Defendants argue that plaintiff has failed to allege that he received a Conserve Cup

5

or other metal-on-metal hip replacement product, rendering his claims meritless.[7] (*Id.* at 6-7) Defendants specifically cite paragraph 58 of the complaint wherein the plaintiff fails to expressly plead that his hip implant device included a Conserve Cup or other metal-on-metal hip replacement components. (*Id.*) In response, plaintiff highlights that the complaint details alleged issues with metal-on-metal total hip replacement products, such as the Conserve Cup, and avers that defendants concealed knowledge of these issues from their customers. (D.I. 1 at ¶¶ 12-57)

Throughout the entirety of the complaint, plaintiff alleges injuries caused by a defective "Wright Medical Hip Implant and Conserve Cup." (*Id.* at ¶¶ 14, 16, 22, 24, 30-31, 35, 37-38, 42-44, 46, 48-52, 54, 56-57, 59) Plaintiff alleges with specificity the dimensions and product numbers of the components to the allegedly defective Wright Medical Hip Implant he received in his total left hip replacement. (*Id.* at ¶ 58) Plaintiff's failure to specify the "Conserve Cup" does not negate his allegations that the hip implant failed and had to be surgically removed, and is not fatal to his complaint as a whole. Plaintiff's facially plausible allegations concerning the defective Wright Medical Hip Implant must be accepted as true at this stage in the proceedings. Moreover, any pleading deficit relating to the Conserve Cup or any metal-on-metal component to the Wright Medical Hip Implant can be cured by amendment.

The court recommends denying the defendant's motion to dismiss the complaint in its entirety. Therefore, the court considers defendants' alternative requests to dismiss certain counts of the complaint, except for negligence. (D.I. 7 at 2)

---

[7] As defendants point out, it appears that plaintiff has copied a complaint from another litigation without carefully editing the document for use in the instant suit. (D.I. 7 at 2 n.1) See, for example, the complaint's incomplete paragraph 29 and reference to the incorrect plaintiff, Lois Annette Anastasi. (D.I. 1 at ¶¶ 29, 101)

6

### i. Choice of Law

Before the court may consider whether to dismiss the individual counts, it is necessary to determine the threshold issue of choice of law. "It is a long-respected principle that a federal court sitting in diversity must apply state substantive law and federal procedural law." *Davis v. Ace Hardware Corp.*, C.A. No. 12-1185-SLR-CJB, 2014 WL 688132, at *8 (D. Del. Feb. 21, 2014). The parties dispute whether Alabama or Delaware substantive law applies to plaintiff's claims. Defendants argue that Alabama law should govern, while plaintiff argues that Delaware law should govern. (D.I. 7 at 4-6; D.I. 12 at 5-7) Furthermore, plaintiff argues that Delaware's choice of law analysis requires that an actual conflict exist prior to engaging in a complete conflict of laws analysis. (D.I. 12 at 5)

> The Third Circuit, in *In re Teleglobe Comm'ns Corp.*, noted:
>
> courts typically wade into choice-of-law determinations when [the law of the forum state and the law of the state with the most significant relationship] truly conflict. While there are not reported Delaware cases on this point, we predict that Delaware would follow the practice of the federal system and most states, and decide a choice-of-law dispute only when the proffered legal regimes actually conflict on a relevant point.

*In re Teleglobe Comm'ns Corp.*, 493 F.3d 345, 358 (3d Cir. 2007) (internal citation omitted). Delaware courts have since recognized that a choice of law analysis is only necessary where the proposed states' laws conflict. *See Endo Pharms. Inc. v. Mylan Pharms. Inc.*, 2014 WL 2532179, at *7 (D. Del. June 2, 2014). Here, a true conflict exists, as Delaware law does not recognize a cause of action for strict liability for injuries caused by allegedly hazardous products, while Alabama permits strict liability claims under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). *See Cline v. Prowler Industries of Maryland, Inc.*, 418 A.2d 968, 971 (Del. 1980) (concluding that under Delaware law, strict liability is not a recognized cause of action for consumer injuries by defective products); *Hamby v. Trucking*, 2019 WL

7

3315202, at *3-4 (M.D. Ala. July 23, 2019) (recognizing the AEMLD as Alabama's response to strict products liability). Although the plaintiff argues for application of Delaware law, he fails to acknowledge that if Delaware law applies, it would result in dismissal with prejudice of his strict liability claims. *See Cline*, 418 A.2d at 971. Therefore, a conflict exists requiring the court to determine the choice of law.

"A federal court sitting in diversity applies the choice of law rules of the state in which it sits." *David B. Lilly Co., Inc. v. Fisher*, 18 F.3d 1112, 1118 (3d Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). In *Travelers Indem. Co. v. Lake*, the Delaware Supreme Court adopted the "most significant relationship" conflict of law analysis from section 145 of the RESTATEMENT (SECOND) OF CONFLICTS OF LAW. *See Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991). The "most significant relationship" test dictates that "the state law which 'has the most significant relationship to the occurrence and the parties' will govern." *ACCU Pers., Inc. v. AccuStaff, Inc.*, 846 F. Supp. 1191, 1212 (D. Del. 1994) (quoting *Travelers Indem. Co.*, 594 A.2d at 47). When determining which state had the most significant relationship, courts "consider the following contacts and weigh them by their relevance with respect to the issue at hand: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Brooks v. Culbreath*, C.A. No. 07-758-SLR-MPT, 2010 WL 376886, at *3 (D. Del. Jan. 28, 2010).

Here, plaintiff sustained injuries in Alabama. (D.I. 1 at ¶¶ 58-60) Plaintiff had a left total hip replacement and surgery to remove the medical device in Alabama. (*Id.*) Plaintiff does not allege any conduct causing him injury occurred in Delaware. Furthermore, plaintiff is a citizen

and resident of Alabama. (*Id.* at ¶ 1) Defendants are incorporated in Delaware and have their principal place of business in Tennessee. (*Id.* at ¶¶ 2-3) With respect to the fourth factor, the the parties do not allege any ongoing relationship. This court has noted that a party's place of incorporation "will usually carry little weight of itself." *Integral Res. (PVT) Ltd. v. Istil Grp., Inc.*, C.A. No. 03-904-GMS, 2004 WL 2758672, at *3 (D. Del. Dec. 2, 2004) (internal quotation marks and citation omitted). Therefore, for the purposes of the pending motion, the court recommends applying Alabama law.

### ii. Strict Liability Claims (Counts I, II, and III)

Defendants argue that plaintiff's strict liability claims (design defect in Count I, manufacturing defect in Count II, and failure to warn in Count III) are not cognizable because the AEMLD is the exclusive method to assert products liability claims under Alabama law.[8] (D.I. 7 at 7-8)

Under the AEMLD, "a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, constitutes negligence as a Matter of law." *Casrell v. Altec Indus., Inc.*, 335 So. 2d 128, 132 (Ala. 1976). The AEMLD is Alabama's "response to strict products liability" but "remains firmly rooted in

---

[8] Defendants argue that plaintiff also fails to state a claim of design defect because he has not alleged that an alternative design was available to defendants at the time the allegedly defective hip replacement product was manufactured. (D.I. 7 at 9) Plaintiff's claim may potentially be repleaded, as his strict liability claims are subsumed by the AEMLD, as discussed *infra*. To state a claim under the AEMLD, a plaintiff must show: "(1) that an injury was caused by one who sold a product in a defective condition that made the product unreasonably dangerous to the ultimate user or consumer; (2) that the seller was engaged in the business of selling such a product; and (3) that the product was expected to, and did, reach the user without substantial change in the condition in which it was sold." *Tillman v. R.J. Reynolds Tobacco Co.*, 871 So. 2d 28, 31 (Ala. 2003) (internal emphasis and quotation marks omitted).

9

. . . negligence." *Hamby*, 2019 WL 3315202, at *3-4 (internal quotation marks omitted) (quoting *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1217 (S.D. Ala. 1998)).

Here, plaintiff's strict liability claims are general, freestanding, and overlapping. "[C]ourts applying Alabama law have declined to recognize a freestanding cause of action for strict liability in the products liability context, finding instead that any such claim is actionable only under the aegis of the AEMLD." *Foster v. Bridgestone Americas, Inc.*, 2013 WL 489162, at *2 (S.D. Ala. Feb. 8, 2013). The only vehicle for pleading strict liability for an allegedly defective product is under the AEMLD. Therefore, Counts I, II, and III are impermissibly pleaded, as these claims are subsumed by the AEMLD. Therefore, the court recommends granting defendants' motion to dismiss Counts I, II, and III without prejudice and granting plaintiff leave to amend his complaint.

### iii. Fraud Claims (Count V and Count VI)

Plaintiff's claims for negligent misrepresentation (Count V) and fraudulent misrepresentation (Count VI) sound in fraud and, therefore, are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). *See Grubbs v. Medtronic, Inc.*, 2019 WL 3288263, at *5 (N.D. Ala. July 22, 2019) (applying Rule 9 to plaintiff's negligent misrepresentation claim); *Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1245 (N.D. Ala. 2013) (analyzing plaintiff's fraudulent representation claim under heightened pleading standard of Rule 9). When a party alleges fraud, Fed. R. Civ. P. 9(b) applies and "[a] plaintiff can satisfy the Rule's particularity requirement with allegations of the date, time, or place of the fraud at issue." *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 472 (E.D. Pa. 2009) (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). To plead a claim for fraud in Alabama, a plaintiff must plead a "(1) a false representation (2) concerning a material existing

fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result." *Grubbs*, 2019 WL 3288263, at *5 (quoting *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 463 (Ala. 2000)); *see also* ALA. CODE § 6-5-101.

Plaintiff has explicitly averred that defendants had knowledge that their hip replacement products, including the Conserve Cup, could fail and lead to injuries and revision surgery. (D.I. 1 at ¶ 43) Plaintiff alleges that defendants failed to disclose these possible consequences to consumers and, instead, prevented physicians and consumers from learning of these alleged risks. (*Id.* at ¶¶ 45-46) The complaint avers that defendants made misrepresentations in their "advertisements, labeling, detailing, marketing, and promotion of the Wright Medical Hip Implant and the Conserve Cup to healthcare professionals, the FDA, Plaintiff, and the public." (*Id.* at ¶ 49) Specifically, plaintiff alleges that defendants stated:

> Despite improvements in the manufacturing, processing, and sterilization of polyethylene, wear related problems still exist in modern Total Hip Arthroplasty. To address problem [*sic*], the CONSERVE Total Hip System has eliminated polyethylene from the design altogether. The result is a one-piece, highly super finished metal-on-metal design, which provides significantly less wear particles than the conventional total hip replacement.

(*Id.* at ¶ 53) The complaint alleges that defendants made these misrepresentations on their website and in product brochures as early as March 2006. (*Id.* at ¶ 52) Plaintiff alleges that, through his surgeon, he relied on defendants' representations in choosing to purchase defendants' hip replacement product and was harmed as a result. (*Id.* at ¶¶ 51, 56, 61-62)

Accepting these facts as true for the purposes of the instant motion to dismiss, plaintiff has plausibly pleaded claims sounding in fraud and misrepresentation under the heightened pleading standard of Rule 9. Therefore, the court recommends denying defendants' motion to dismiss Counts V and VI.

#### iv. Breach of Warranty Claims (Count VII and Count VIII)

The focus of the parties' dispute is whether plaintiff's breach of warranty claims are time-barred under Alabama's statute of limitations. The parties agree that warranty claims are subject to a four-year statute of limitations, but dispute when the statute of limitations accrues. (D.I. 7 at 12; D.I. 12 at 10) The date of accrual is dependent upon whether the hip replacement medical device in issue is a consumer good or a non-consumer good. Under Alabama law, consumer goods are "goods that are used or bought for use primarily for personal, family, or household purposes." ALA. CODE § 7-9A-102. If a medical device is a non-consumer good as defendants argue, then the statute of limitations accrued on September 19, 2011, when the tender of delivery was made, and is time-barred; if it is a consumer good as plaintiff argues, then the statute of limitations accrued on October 31, 2017, when plaintiff avers the injury occurred, and would not be time-barred. *See* ALA. CODE § 7-2-725(1)-(2).

The complaint does not allege whether the hip replacement medical device is a consumer good. (*See* D.I. 1) Instead, plaintiff alleges in a conclusory fashion that a medical device is a consumer good in his answering brief.[9] (D.I. 12 at 10) The court does not need to accept plaintiff's conclusory allegations in his brief as true.

Here, amendment of the pleading cannot cure this deficiency. There is no definitive ruling from the Alabama Supreme Court as to whether a medical device is a consumer good. Sitting in diversity, the court must "predict how that court would rule if faced with the issue"

---

[9] Plaintiff argues that his breach of warranty claims are not time-barred under either Alabama or Delaware law. (D.I. 12 at 9) However, plaintiff does not provide any analysis of the statute of limitations for breach of warranty claims under Delaware law. (*Id.* at 9-10) Pursuant to DEL. CODE tit. 6 § 2-725, the applicable statute of limitations is four years, accruing when tender of delivery is made. *See* DEL. CODE tit. 6 § 2-725(1)-(2). Moreover, the identical definition of "consumer goods" exists under Delaware law. *See* DEL. CODE tit. 6 § 9-102. Thus, the outcome would not be different in Delaware.

12

and, in doing so, considers persuasive authority from our sister court in the Northern District of Alabama. *See Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011); *Collins v. Davol, Inc.*, 56 F. Supp. 3d 1222, 1231 n.9 (N.D. Ala. 2014).

The court in *Collins* similarly sat in diversity and conducted a conflict of law analysis before analyzing plaintiff's breach of warranty claim. *See Collins*, 56 F. Supp. 3d at 1230-31. The plaintiff in *Collins* was a citizen of Alabama and received surgery in Tennessee, wherein a hernia mesh[10] was implanted into plaintiff's abdomen. *See id.* at 1225 & n.1. The court determined that Tennessee substantive law applied to plaintiff's breach of warranty claim because the relevant contract was formed in Tennessee. *See id.* at 1230. Applying the Tennessee Product Liabilities Act ("TPLA"), the court noted that all product liabilities claims under Tennessee law must be brought within ten years from the date on which the product was first "purchased for use or consumption." *Id.* at 1231 (quoting TENN. CODE § 29-28-103). Therefore, the court concluded that plaintiff's breach of warranty claim was time-barred under Tennessee's statute of repose. *See id.* at 1231 n.9, 1232.

However, in a footnote explaining that the result would be no different under Alabama law, the court noted that "[a]lthough no Alabama court has considered whether a medical device is a 'consumer good,' such a device is clearly inconsistent with the Alabama Uniform Commercial Code's definition of 'consumer good.'" *Id.* at 1231 n.9 (citing *CNH Am., LLC*, 41 So. 3d at 45). Plaintiff argues that the court in *Collins* only assumed that a medical device is not a consumer good. (D.I. 12 at 10) However, the court in *Collins* analyzed Alabama's Uniform Commercial Code and case authorities in deciding whether plaintiff's breach of warranty claim

---

[10] A hernia mesh is a synthetic mesh used to repair a hernia. *See Inguinal Hernia*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/inguinal-hernia/diagnosis-treatment/drc-20351553 (last visited Feb. 25, 2020).

was time-barred. *See Collins*, 56 F. Supp. 3d at 1230-32. Plaintiff fails to proffer any legal authority that medical devices are consumer goods and instead cites legal authority analyzing whether automobiles and cigarettes are consumer goods. (D.I. 12 at 10) *See Ex Parte Kia Motors America, Inc.*, 881 So. 2d 396, 402-03 (Ala. 2003) (discussing when plaintiff's breach of warranty claim regarding an allegedly defective car accrued); *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101 (Ala. 2003) (analyzing whether plaintiff's breach of implied warranty claims against a cigarette manufacturer were time-barred).

Therefore, the weight of authority is such that the court predicts that the Alabama Supreme Court would find a medical device is a non-consumer good. Like a hernia patch, a hip replacement product is a medical device that would not be a consumer good under ALA. CODE § 7-9A-102. Accordingly, plaintiff's breach of warranty claims regarding a hip replacement medical device accrued upon tender of delivery, September 19, 2011, and the statute of limitations ran on September 19, 2015. (D.I. 1 at ¶ 58) *See* ALA. CODE § 7-2-725. Plaintiff did not file the present action until October 7, 2019. (D.I. 1) Any attempts to amend the pleading would be futile. Therefore, the court recommends granting defendants' motion to dismiss Counts VII and VIII as time-barred, with prejudice.

### b. Motion to Strike

Defendants move to strike plaintiff's request for prejudgment interest. (D.I. 7 at 13-14) In support of their request for relief, defendants contend that damages are not readily ascertainable. (*Id.*) Plaintiff counters that under Alabama law, the legal rate of prejudgment interest is set at six percent per annum and that medical expenses are reasonably certain and capable of calculation. (D.I. 12 at 13-14) *See Rhoden v. Miller*, 495 So. 2d 54, 58 (Ala. 1986)

(citing ALA. CODE § 8-8-1); *Cahaba Disaster Recovery, LLC v. Rodgers*, 2012 WL 253437, at *8 (S.D. Ala. Jan. 26, 2012).

"[P]rejudgment interest is allowable at the legal rate in noncontract cases where the damages can be ascertained by mere computation, or where the damages are complete at a given time so as to be capable of determination at such time in accordance with known standards of value." *Nelson v. AmSouth Bank, N.A.*, 622 So. 2d 894, 895 (Ala. 1993). Courts have noted that ALA. CODE § 8-8-1 sets the rate of interest at six percent and that this rate is applicable to prejudgment interest. *See Brown v. Total E & P USA Inc.*, 2008 WL 4724309 (E.D. La. Oct. 24, 2008) (citing *Burgess Mining & Construction Corp. v. Lees*, 440 So. 2d 321, 338 (Ala. 1983)). However, "Alabama has adopted the common law rule that prejudgment interest is *not permissible in actions for personal injury* and wrongful death, which by their very nature involve unliquidated damages until such time as the finder of fact renders a decision." *Id.* (emphasis added) (citing *LeFevre v. Westberry*, 590 So. 2d 154, 163 (Ala. 1991)).

Furthermore, plaintiff argues that this is not an issue ripe for adjudication and cites *Brown* for this contention. (D.I. 12 at 13) However, the court in *Brown* did not deny plaintiff's motion for imposition of prejudgment interest based upon the ripeness of the issue. Rather, the court denied plaintiff's motion because the damages were not readily ascertainable, noting that, "proceeds held in an account are *quite distinct from the recovery of past medical services* and future lost earnings in that the amount held in an account is at all times 'capable of being made certain.'" *Brown*, 2008 WL 4724309, at *2-3. Plaintiff argues that, if successful, he may show that his past medicals are reasonably certain. (D.I. 12 at 14) Aside from prejudgment interest being impermissible in personal injury actions, the assessment of plaintiff's damages requires a

15

jury's evaluation and ultimate verdict and, accordingly is not readily ascertainable. *See Brown*, 2008 WL 4724309, at *2.

Therefore, the court recommends granting defendants' motion to strike plaintiff's demand for prejudgment interest without prejudice.

## V. CONCLUSION

For the foregoing reasons, the court recommends:

(1) DENYING defendants' motion to dismiss the complaint in its entirety;

(2) GRANTING defendants' motion to dismiss Counts I, II, and III without prejudice and granting plaintiff leave to amend his complaint;

(3) DENYING defendants' motion to dismiss Counts V and VI;

(4) GRANTING defendants' motion to dismiss counts VII and VIII with prejudice; and

(5) GRANTING defendants' motion to strike plaintiff's demand for prejudgment interest without prejudice.

Following the expiration of the objections period and in the event the court adopts the recommendation of allowance of amendment, the court recommends that the District Court thereafter permit plaintiff fifteen (15) days to file an amended complaint.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 25, 2020

Sherry R. Fallon
United States Magistrate Judge